IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIMMIE D. GREEN, JR. (TDCJ No. 1803007), Petitioner, V. LORIE DAVIS, Director Texas Department of Criminal Justice, Correctional Institutions Division,[1] Respondent. | § § § § § § § § § § § § | No. 3:15-cv-3906-G-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Jimmie D. Green, Jr., a Texas inmate, proceeding *pro se*, has filed an application for writ of habeas corpus under 28 U.S.C. § 2254. For the reasons explained below, Green's application should be denied.

**Applicable Background**

In March 2012, a jury in Johnson County, Texas found Green guilty of burglary of a habitation, aggravated robbery with a deadly weapon, evading arrest, and aggravated assault with a deadly weapon (two counts); the jury answered the deadly-weapon special issue in the affirmative and found to be true the enhancement paragraphs contained in the indictment; and Green was sentenced to concurrent

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas Department of Criminal Justice, Correctional Institutions Division, and, as his successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

sentences of life for burglary and for aggravated robbery, 25 years for evading arrest, and 99 years for each aggravated assault. *See State v. Green*, No. F46227 (294th Dist. Ct., Johnson Cty., Tex.).

The trial court's judgment was affirmed. *See Green v. State*, No. 10-12-00308-CR, 2014 WL 2946274 (Tex. App. – Waco June 26, 2014). The Texas Court of Criminal Appeals (the "CCA") refused Green's petition for discretionary review. *See Green v. State*, PD-1139-14 (Tex. Crim. App. Sept. 24, 2014). And the CCA denied Green's state habeas application without written order on the findings of the trial court without a hearing. *See Ex parte Green*, WR-83,583-01 (Tex. Crim. App. Aug. 26, 2015).

The applicable factual background is taken from the Waco Court of Appeals's decision:

> This incident began with the burglary of a residence located at 2152 S.W. Wilshire Boulevard in Burleson, Johnson County, Texas. This address encompasses two residences, some barns, and livestock. Access to the residences and barns is from a single driveway that is approximately 300 yards in length. Located approximately 200 yards down the driveway is the residence of Shaun and Anna Berry and their two children. The residence that was burglarized is located approximately 100 feet from the Berry's home and is occupied by Chris Cantu, his fiancée Jessica Leveret, and the couple's two children.
>
> On February 16, 2012, at approximately 5:30 p.m., Shaun came home from work and noticed a white, Honda Civic backed up to Cantu's front porch. The trunk of the Civic was opened. Because he was suspicious of the Civic, Shaun, who was speaking to Anna on his cellphone, asked Anna to call 911. Thereafter, Shaun observed two African-American males, one thin and one larger, exit the front door of Cantu's home. At trial, the thin African-American male was identified as appellant, while the larger African-American male was identified as Terry Speed. As appellant and Speed got into the Civic, Shaun put his truck into reverse and began backing down the driveway. At this point, Cantu arrived and pulled his Jeep Grand Cherokee next to Shaun's truck, which blocked the

driveway. Cantu asked Shaun what was going on; the two decided to exit their vehicles and walk towards the Civic.

As Shaun and Cantu approached, appellant drove the Civic toward the back gate of the property. Realizing that the back gate was locked, appellant made a U-turn and drove the Civic towards Shaun and Cantu. As he tried to pass Shaun and Cantu's vehicles, appellant contacted Shaun's Dodge truck and a nearby barbed-wire fence. The contact removed the passenger-side mirror on the Civic and caused a scraping of the paint on the right side of the Civic. After seeing this, Shaun called 911 and ran towards his house to retrieve his 20-gauge shotgun.

As he exited his house with the shotgun, Shaun observed appellant open the driver's-side door and fire a shot from a .40-caliber pistol in the direction where he and Cantu were. Shaun responded by firing two shots at the Civic while Cantu ran inside to get his 12-gauge shotgun. After retrieving his shotgun, Cantu joined Shaun in firing upon the Civic. During this commotion, Speed was able to exit the Civic, get into Shaun's truck, and move Shaun's truck so that the Civic could escape. Appellant drove the Civic past Shaun's truck, picked up Speed, and exited the property by heading south on SH 174 toward Joshua, Texas.

Shortly after appellant turned onto the highway, Officer Jonathan Gomez of the Burleson Police Department arrived and spoke with Anna, who gave a description of the Civic and the direction it was traveling. However, Anna inaccurately described appellant and Speed as Hispanic males. A minute or two after Anna provided her description of the suspects, Shaun called 911 and identified the suspects as two African-American males.

Sergeant Curran Massey and Officer Patrick Jones of the Joshua Police Department heard the dispatch regarding the burglary. Approximately four minutes after hearing the dispatch, Sergeant Massey and Officer Jones spotted the Civic approaching. The Civic matched the descriptions provided by Anna and Shaun. Sergeant Massey positioned the patrol car behind the Civic and activated the patrol car's overhead lights. Appellant apparently saw the patrol car and initially pulled onto the shoulder of the highway. However, shortly thereafter, appellant abruptly accelerated and attempted to re-enter the highway. Sergeant Massey utilized the PIT maneuver to cause the Civic to spin out and come to a stop. Officers extracted appellant and Speed from the vehicle and placed them both under arrest.

*Green*, 2014 WL 2946274, at *1-*2 (footnotes omitted).

In his timely-filed Section 2254 application, Green asserts one claim of prosecutorial misconduct, one claim of trial court error, and alleges two reasons why his trial counsel provided constitutionally ineffective assistance.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 574 U.S. \_\_\_, 135 S. Ct. 1, 2

(2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

*Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision

was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny

relief." *Harrington*, 562 U.S. at 98.

**Analysis**

Prosecutorial misconduct claim [Ground 1]

Green alleges that the prosecutor at his trial referenced Green's prior convictions during the guilt/innocence phase of his trial after agreeing not to do so through a motion in limine.

In analyzing allegedly improper remarks made by a prosecutor, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006) (improper prosecutorial comments require reversal only when, "taken as a whole in the context of the entire case, [they] prejudicially affected the substantial rights of the defendant"). The relevant factors for a court to consider in this analysis are the magnitude of the prejudicial effect of the prosecutor's remarks, the efficacy of any cautionary instruction by the judge, and the strength of the evidence supporting the conviction. *See id.*; *see also Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008) (conviction will not be set aside on federal habeas review unless the prosecutor's conduct "was persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks").

Green is correct that there was an agreement not to use his prior convictions during the guilt/innocence phase, but the record does not support his argument that

those convictions were referenced during that phase. Instead, the prior convictions were introduced in the punishment phase after Green pleaded true to the felony enhancement paragraphs. *See* Dkt. No. 13-18 at 10-13.

But, even if the prosecutor had mentioned Green's prior convictions during the guilt/innocence phase, in violation of the motion in limine, such a violation does not necessarily amount to – and Green, moreover, has not shown – a violation of due process under *Darden. See, e.g., United States v. Pirovolos*, 844 F.2d 415, 425-27 (7th Cir. 1988) ("Under the *Darden* approach, some facts weigh in Pirovolos's favor. First, the prosecutor's statements ... regarding Pirovolos's prior convictions ... constituted serious misconduct.... Viewing the record as a whole, however, we do not conclude that the prosecutor's comments denied Pirovolos a fair trial.").

In any event, the state court's denial of this ground is "not unreasonable in light of the evidence, or in light of clearly established federal law." *Vollmer v. Davis*, ___ F. App'x ___, No. 14-10301, 2016 WL 7403061, at *1 (5th Cir. Dec. 20, 2016) (per curiam).

<u>Trial court error [Ground 2]</u>

Green next asserts that the trial court erred by failing to *sua sponte* hold a competency hearing.

Undoubtedly, "[t]he conviction of a legally incompetent defendant violates constitutional due process." *Albana v. Director*, No. No. 6:06cv407, 2007 WL 788330, at *3 (E.D. Tex. Mar. 14, 2007) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000)). And "[a] defendant has a procedural due

process right to a competency hearing when the evidence raises a bona fide doubt as to the defendant's competence at the time of trial and any immediately related proceedings." *Lashawn v. Stephens*, No. A-12-CA-623-SS, 2013 WL 4833850, at *4 (W.D. Tex. Sept. 9, 2013) (citing *Pate*, 383 U.S. at 385; *McInerney v. Puckett*, 919 F.2d 350, 351 (5th Cir. 1990)); *see also, e.g., Albana*, 2007 WL 788330, at *3 ("A state court must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a bona fide doubt as to competency." (citing *Mata*, 210 F.3d at 329)).

"Three factors should be considered when determining whether a 'bona fide doubt' exists: the existence of any history of irrational behavior, defendant's demeanor at trial, and prior medical opinion." *Lashawn*, 2013 WL 4833850, at *4 (citing *Chenault v. Stynchcombe*, 546 F.2d 1191, 1193 (5th Cir. 1977); *Mata*, 210 F.3d at 329).

The state court's denial of this ground is neither unreasonable in light of the evidence nor contrary to clearly established federal law, as Green has offered no evidence that raises a bona fide doubt as to whether, during his trial or related proceedings, he had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he [had] a rational as well as factual understanding of the proceedings against him," *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam), the established test of incompetency, *see, e.g., Albana*, 2007 WL 788330, at *3.

Ineffective-assistance-of-counsel ("IAC") claims [Grounds 3 & 4]

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel under the two-prong test established in *Strickland v.*

*Washington*, 466 U.S. 668 (1984), under which a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that

-11-

they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Harrington*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and, therefore, are

analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that

federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

Green argues that his trial counsel violated the Sixth Amendment right to effective counsel by arguing during closing that his co-defendant, Speed, was guilty because, according to Green, that argument meant Green too was guilty under the law of parties. But Green leaves out that his attorney also argued that Green lacked the culpable mental state necessary to be found guilty under the law of parties. *See* Dkt. No. 13-17 at 109-20; *see also* TEX. PENAL CODE §§ 7.01 & 7.02.

Green also argues that his counsel was ineffective for failing to object to the admission of Green's prior convictions. But, as set out above, those convictions were admitted, properly under Texas law, *see* TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1), during the punishment phase, *see* Dkt. No. 13-18 at 10-13.

The undersigned therefore cannot conclude that either state court determination – that these allegations of constitutionally-ineffective assistance should be denied – amounts "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see, e.g., Feldman*, 695 F.3d at 378; *Cotton*, 343 F.3d at 752-53; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are

virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)).

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 28, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE